E-FILED
Friday, 26 October, 2018 02:43:04 PM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| KEDRON JONES JR., | ) |
| Plaintiff, | ) |
| v. | ) 16-CV-3143 |
| JOHN R. BALDWIN, IDOC DIRECTOR, et al., | ) |
| Defendants. | ) |

## OPINION

**JAMES E. SHADID, U.S. District Judge.**

Plaintiff, proceeding pro se, alleges that he was repeatedly exposed to the raw sewage of other inmates during his incarceration in the Western Illinois Correctional Center from June 10, 2015 to May 17, 2017. This allegedly occurred when an inmate in the adjoining cell would flush the toilet, causing the contents to travel to the toilet in Plaintiff's cell.

Defendants' first motion for summary judgment was denied because the Court needed more information to determine whether a disputed material fact exists for trial. (11/21/17 Order, d/e 56.) Defendants have renewed their summary judgment motion, but the

motion still does not demonstrate the absence of a disputed material fact.  Disputed facts remain about the extent of this plumbing problem, Defendants' knowledge of the extent of the problem, and Defendants' authority to fix the problem.  Summary judgment is denied.

**Analysis**

Plaintiff claims that the toilets at Western Correctional Center, other than the toilets on housing unit four and the upper galleries, flush into the toilet in the adjoining cell, causing an inmate's feces and urine to splash into the adjoining cell's toilet.  Sometimes the traveling sewage spills onto the floor of the adjoining cell or splashes onto an unsuspecting inmate sitting on the adjoining cell's toilet.  Plaintiff describes the problem thus:

> **Q.  So maybe you can, can you just describe for me how, how, how the sewage comes up and out of the toilet?  Is it unexpected or it's a slow flow up out?  Can you just describe it for me?**
>
> A.  No it comes up with, it just shoots up.  Like you ever, if you take, if you take a straw and blow it in a cup and the bubbles come up, same thing.  You are sitting on your toilet and all of a sudden (witness making audible sounds).  And it's, your next door neighbor's manure and urine splashes all over your rear end or your penis.  I'm saying, you know, stuff hanging down in the toilet.  I'm not trying to be funny but, you know.

* * *

A. You are sitting there and your behind is sitting in somebody else's mess. And it just –

**Q. Fair enough.**

A. –doesn't—

**Q. Okay. So then once the sewage comes up and out of the toilet how, how are you cleaning that up?**

A. With a rag.

**Q. Do you have to scoop it, like scoop - -**

A. Yeah.

**Q. –it back into the toilet—**

A. Yes ma'am.

(Pl.'s Dep. 19-20.) Plaintiff would use his own towels and newspaper to try to clean the mess. Id. p. 21. If Plaintiff was in his cell when this happened, he could prevent the waste from reaching the floor by flushing the toilet. However, if Plaintiff was not in his cell, an overflow of sewage could occur:

Q. Does it happen every time another inmate flushes?

A. Every time. If I'm in cell, like I'm in cell 20 right now, the guy in cell 21, when he flushes his toilet, his manure and urine fills my toilet. When I was in One House, I was in 28 cell. When the guy in 27 cell used the washroom and flushes his toilet, it fill mine up. If I don't flush it

immediately, if he flushes his toilet three or four more times, which most guys do, the whole time they are urinating they will flush the toilet so no more splash and everything, your toilets fill to the rim. If you flush it one more time, it's flowing your cell. If you are not in your cell to flush it, then you got a problem. When you walk in your door, you have got to clean up some mess I'm saying. . . ."

(Pl.'s Dep. 14-15.) Plaintiff maintains that sufficient cleaning supplies were not provided to clean up the sewage when it did spill out onto the floor. (Pl.'s Dep. 15)("They are not going to give you anything to clean it up with. You have got to buy shampoo or body wash, or whatever, from the commissary . . . ."). Plaintiff has filed grievances from other inmates at Western supporting Plaintiff's claim that this is a systemic, ongoing problem. (d/e 65-1, 65-2, 65-3, 65-5.)

Defendants admit that sometimes cross-flushing occurs due to the poor design of the pipes, but they deny that urine or feces "shoot up out of the toilets" or that the toilets fill with urine or feces. According to the Chief Engineer at Western:

> The housing units at Western were built with the cells sharing a common pipe chase between two cells. Both toilets adjacent from each other drain to the same pipe causing sometimes what we refer to as a cross flush if the main sewer is slow. Due to the age of the facility, piping, and the high pressure toilets we use here this does happen. After a work order has been issued and we

> are aware of this happening we do what we can to prevent a further problem, clean the pipe, and inspect for any blockages that may be causing the problem and correct them. In most all cases, the toilet may have a little sign of cross flush on its side, but a simple flush of the toilet cures the problem. The toilets do not backup or fill with urine/feces but they do show signs of cross flush occasionally due to poor design. Urine or feces does not shoot up out of the toilets due.[1]

(Robinson Aff. ¶ 10.) The Chief Engineer also avers that he performed a blue dye test on Plaintiff's toilet in May 2016 and did not see any evidence of cross-flushing. Plaintiff disputes this, contending that Plaintiff himself witnessed the blue dye travel into Plaintiff's toilet during the test. (Pl.'s Dep. pp. 22-24.)

Defendants first argue that they lack personal responsibility. However, Plaintiff's evidence allows an inference that Defendants knew about the problem and consciously took no action to fix the problem. Plaintiff maintains that he wrote to the IDOC director and copied all Defendants on that letter. (Pl.'s Dep. 33-34, 37, 39.) Plaintiff also contends that he also talked directly to Defendant Korte

---

[1] This is where the sentence ends in the Engineer's affidavit.

multiple times. (Pl.'s Dep. 38.) Additionally, if Plaintiff is believed, the Chief Engineer who performed the blue dye test acknowledged the cross flush, stating that it was a design flaw and needed a cross flush valve to fix the problem, but there was no money. (Pl.' Dep. p. 22.)

The grievances filed by other inmates also allow a reasonable inference that Plaintiff's description of the problem is accurate and Defendants knew about it. Some of the responses to those grievances, which appear to be signed off on by Defendants Korte and Watson and possibly Baldwin, admit to the problem and admit that the only fix is to replace the plumbing. *See, e.g.*, d/e 65-1, p. 11 ("maintenance came to the cell and was explained why the toilet does that and that nothing can be done about it."); d/e 65-2, p. 17 (response to 2015 grievance)("due to the age of the facility, parts are wearing out and being replaced as they wear out. They are aware of the problem."); d/e 65-2, p. 11 (same); d/e 65-3 ("This is done [sic] to poor design and other inmates flushing non-flushable items down the toilet. A work order will only free debris not fix the problem. At this time, the State does

not have the fund to fix this poor design."); d/e 65-3, p. 17 ("[T]he problem is being addressed. It is due to the age of the facility and parts are becoming hard to get to replace defective ones."); *see also* d/e 65-4, p. 4, email from grievance officer Goins to Administrative Review Board Johnson ("We have had issues with the toilets for years. I was always told that the problem was the way the plumbing was installed when the institution was built. Hope you can get a better answer!"); *see also* Antonelli v. Sheahan, 81 F.3d 1422, 1429 (7th Cir. 1996)(supervisory officials "can be expected to know of or participate in creating systemic, as opposed to localized, situations."). In any event, Defendants offer no affidavits of their own, which is in part why Defendants' first summary judgment motion was denied.

Judge Bruce reached the same conclusion in Garrett v. Korte (17-cv-3009 (C.D. Ill.) as to Defendant Korte. The plaintiff in that case maintains that, during his seven years in Western, the toilets would overflow with waste from the next cell on a daily basis, and waste would run down the sides of the toilet and onto the floor. (7/30/18 summary judgment

order, 17-cv-3009.) Summary judgment has been denied in that case, and a trial is set in April 2019, pro bono counsel having been appointed.

Defendants also argue that the toilet problem is not objectively serious enough to rise to a constitutional violation. But accepting this argument requires ignoring Plaintiff's description of the problem, and Plaintiff's version governs at the summary judgment stage. Miller v. Gonzalez, 761 F.3d 822, 827 (7th Cir. 2014)(record must be construed in favor of nonmovant—Court must "avoid the temptation to decide which party's version of the facts is more likely true."). Believing Plaintiff's description, a reasonable juror could find that the plumbing problem deprived Plaintiff of the "minimal civilized measure of life's necessities" according to "evolving standards of decency." Rhodes v. Chapman, 452 U.S. 337, 346 (1981); Gillis v. Litscher, 468 F.3d 488, 493 (7th Cir.2006) ("A lack of heat, clothing, or sanitation can violate the Eighth Amendment."); DeSpain v. Uphoff, 264 F.3d 965, 974 (10th Cir. 2001) ("Exposure to human waste…evokes both the health concerns emphasized in *Farmer*, and the more general standards of dignity embodied in the

Eighth Amendment.")(*cited by* Vinning-El v. Long, 482 F.3d 923 (7th Cir. 2007)(broken sink/toilet, water covering floor, walls smeared with blood and feces). Defendants next contend that they were not deliberately indifferent to the problem but again that argument requires accepting the Chief Engineer's description of gravity the problem rather than Plaintiff's. Drawing inferences in Plaintiff's favor, simply unplugging the pipe may help but does not fix or prevent the problem. Gray v. Hardy, 826 F.3d 1000 (7th Cir. 2016)("Knowingly persisting in an approach that does not make a dent in the problem is evidence from which a jury could infer deliberate indifference.").

Similarly, Defendants' qualified immunity argument fails because the argument is based on drawing competing inferences in Defendants' favor, which the Court cannot do. Gutierrez v. Kermon, 722 F.3d 1003, 1010 (7th Cir. 2013)(defendant not entitled to qualified immunity based on his version of disputed facts).

The Court does agree with Defendants that Plaintiff's request for injunctive relief appears moot since he is no longer incarcerated in Western Illinois Correctional Center. "If a prisoner is transferred to another prison, his request for injunctive relief against officials of

the first prison is moot unless 'he can demonstrate that he is likely to be retransferred.'" Higgason v. Farley, 83 F.3d 807, 811 (7th Cir. 1996)(quoted cite omitted).

**IT IS THEREFORE ORDERED:**

1) Defendants' motion for summary judgment is denied. (d/e 61.)

2) Plaintiff's motions for status are moot. (d/e's 67, 68.)

3) A status conference by telephone is scheduled for November 7, 2018, at 10:00 a.m. The clerk is directed to issue a writ to secure Plaintiff's presence.

ENTERED: 10/26/2018

FOR THE COURT:

                                 **s/James E. Shadid**
                                   JAMES E. SHADID
                        UNITED STATES DISTRICT JUDGE